1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CASANDRA BRAWLEY, an individual,

                    Plaintiff,

          v.

STATE OF WASHINGTON,
WASHINGTON STATE DEPARTMENT
OF CORRECTIONS, BRYDEE GLASCO,
Correctional Officer, Washington Corrections
Center for Women, in her individual and
official capacity, HERBERT JOY,
Correctional Officer, Washington Corrections
Center for Women, in his individual and
official capacity,

                    Defendants.

Case No.  C09-5382RJB

ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

          This matter comes before the Court on the Defendants' Amended Motion for Summary Judgment

(Dkt. 22 refiled as 34), Plaintiff's Motion for Partial Summary Judgment (Dkt. 27) and Defendants'

motions to strike (Dkts. 44 and 46).  The Court has considered the pleadings filed in support and in

opposition to the motions and the record.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

          Thirty year old Plaintiff, Casandra Brawley, brings this case seeking relief from violations of her

constitutional rights that she alleges occurred during the birth of her first child in April of 2007.  Dkt. 1.

### A.    FACTS

          In 2004, Plaintiff was sent to the Washington State Corrections Center for Women ("WCCW") to

ORDER
Page - 1

serve an approximately year long sentence after a possession of stolen property conviction.  Dkt. 28, at 2.  She was released early for good time served.  Dkt. 28, at 2.  Plaintiff has never been convicted of a violent crime.  Dkt. 28, at 2.  Plaintiff has seven total felony convictions, including one from 2006 for second degree theft.  Dkts. 28, at 2 and 30-2, at 11.  Plaintiff was sent back to the WCCW in December of 2006 to serve fourteen months on the second degree theft conviction.  Dkt. 28, at 2.  Plaintiff was five months pregnant, having a due date of April 16, 2007.  Dkt. 28, at 2 and 3.  When she began her 2006 sentence, she had two outstanding warrants for felonies in two other counties.  Dkt. 28, at 2. When she began her sentence she was classified as "medium security."  Dkt. 28, at 2.  Kevin Mauss, a Correctional Program Manager at the WCCW, states that Plaintiff was classified as "medium security" because of the two outstanding warrants, and because she had an incident of failing to report while on community supervision, and so was placed on "escape status" then.  Dkt. 25, at 3.

Plaintiff states that anytime she was transported from WCCW for prenatal care, she was placed in full restraints.  Dkt. 28, at 2.  She states that "full restraints" meant that she had a metal chain around her waist, her hands were handcuffed together, and the handcuffs were attached to the waist chain.  Dkt. 28, at 2.  She asserts that the chains were humiliating and uncomfortable.  Dkt. 28, at 2.

On April 13, 2007, Plaintiff states that she woke up around 4:00 a.m. and noticed that she was leaking fluid.  Dkt. 28, at 3.  She states that this was her first baby and she did not know what to expect. Dkt. 28, at 3.  Plaintiff states that she went to the officer on duty, who called the clinic, and they eventually decided to send her back to bed.  Dkt. 28, at 3.  She reported another "gush of water" at 8:00 a.m., went to the medical clinic, and they decided to send her to St. Joseph Hospital in Tacoma, Washington.  Dkt. 28, at 3-4.  Plaintiff states that she was stripped-searched and put in an orange jumpsuit.  Dkt. 28, at 4.  Plaintiff states that she was put in full restraints and transported to the hospital. Dkt. 28, at 4.  She was examined by medical personnel who determined that she had not ruptured her membranes and was not in labor.  Dkts. 28, at 4, and 30-2, at 45.  Plaintiff was returned to the WCCW in full restraints.  Dkt. 28, at 4.

Plaintiff reported continued leaking and so spent the night in the WCCW's clinic.  Dkts. 28, at 4 and 30-2, at 25.  Treatment notes from L.K. Wilts, R.N., indicate that Plaintiff denied having any contractions.  Dkt. 30-2, at 25.  Nurse Wilts suspected "Braxton Hicks contractions."  Dkt. 30-2, at 25.

1    She was returned to her unit on April 14, 2007.  Dkt. 30-2, at 25.

2         The next day, April 15, 2007, around 6:00 p.m., Plaintiff returned to the WCCW's clinic and

3    reported having contractions four to five minutes apart.  Dkt. 30-2, at 25.  Nurse Melissa Morgan noted on

4    the fetal monitor that Plaintiff's contractions were three minutes apart and lasting 30 seconds.  Dkts. 30-2,

5    at 25, and 30-3, at 6.  Plaintiff reported that she was in a lot of pain from the contractions.  Dkt. 28, at 5.

6    She reports contractions in her abdomen and lower back.  Dkt. 28, at 5.  Nurse Morgan stated that she

7    filled out a transfer form to tell the shift office and transporting officers that Plaintiff need to be taken to

8    the hospital because nurse Morgan thought that Plaintiff was in labor.  Dkt. 30-3, at 6.  The Incident

9    Report states that Plaintiff was to be transported to the hospital "due to the possibility of active labor."

10   Dkt. 30-3, at 37.  The report states that Officers Byrdee Glasco and Herbert Joy, the remaining

11   Defendants here, "will transport via a state vehicle and have been advised of this situation."  Dkt. 30-3, at

12   37.

13        Plaintiff states that she was strip-searched, put on the orange jumpsuit, and placed in full

14   restraints.  Dkt. 28, at 5.  Officer Glasco, a mother herself, testified that she was aware that DOC policy at

15   the time stated that offenders would not be restrained during labor and delivery, but that the policy did not

16   say they would not be restrained during transportation.  Dkt. 30-3, at 14.  Officer Glasco acknowledges

17   that it was contrary to DOC policy to use waist chains while transporting women in the third trimester of

18   pregnancy.  Dkt. 30-3, at 14.  Officer Glasco states that when her supervisor told her she was transporting

19   Plaintiff, she was not told Plaintiff posed any risk of harm or escape.  Dkt. 30-3, at 15.  Officer Glasco

20   denies Plaintiff was put in a waist restraint, and maintains that Plaintiff was only handcuffed in the front.

21   Dkt. 30-3, at 15.  Officer Glasco states that the clinic nursing staff, she can't remember who, told her that

22   Plaintiff was full term, had a fever, did not feel well, and needed to be seen at St. Joseph's hospital.  Dkt.

23   30-3, at 16.  Officer Glasco denies ever being told that Plaintiff was having contractions and that the

24   contractions were coming at regular intervals.  Dkt. 30-3, at 16.  Officer Glasco states that she asked

25   Plaintiff if her water broke, and Plaintiff stated that she did not think so.  Dkt. 30-3, at 16.  Officer Glasco

26   states that she asked Plaintiff if she was having contractions and Plaintiff denied having any contractions.

27   Dkt. 30-3, at 16.  Officer Glasco testified that she felt that if an inmate was in active labor, it was not

28   appropriate to restrain the inmate.  Dkt. 23-3 at 19.  Officer Joy was armed with a gun.  Dkt. 30-3, at 30.

1

2        On the way to the hospital the evening of April 15, 2007, Officer Joy drove the car, Officer Glasco

3   sat in the front, and Plaintiff sat in the back.  Dkt. 30-3, at 17.  Plaintiff states that while on the drive to St.

4   Joseph's hospital, Defendant Officer Glasco was timing her contractions with a watch.  Dkts. 28, at 6, 30-

5   2, at 4.  Plaintiff states that during this 20 or so minute drive, the contractions were about two minutes

6   apart.  Dkt. 28, at 6.  Officer Glasco contradicts Plaintiffs assertions, testifying that during the drive she

7   repeatedly asked Plaintiff whether she was having contractions, and Plaintiff denied them, just saying that

8   she did not feel good, that she was in pain.  Dkt. 30-3, at 18.

9        When they arrived at the hospital, around 7:00-7:30 p.m., the officers put Plaintiff into a

10   wheelchair.  Dkt. 28, at 6 and 30-2, at 5.  Officer Joy states that he remembers one of the nurses being

11   upset that there was a male officer escorting a woman who was "obviously in labor."  Dkt. 30-3, at 32-33.

12   Officer Joy states that he told the nurse "deal with it, because [he's] not going anywhere."  Dkt. 30-3, at

13   33.  Officer Joy states that he stayed outside the room when Plaintiff had vaginal examinations.  Dkt. 30-

14   3, at 33.  Officer Joy stated that he stayed on the other side of a privacy curtain.  Dkt. 30-3, at 33. Plaintiff

15   states that once they got into an examination room, the officers took the waist chain and handcuffs off,

16   and chained her ankle to the bed.  Dkt. 28, at 6.  Plaintiff was put in a hospital gown and a fetal monitor

17   was attached to her abdomen.  Dkt. 30-3, at 19.  Plaintiff reports very painful contractions at this point.

18   Dkt. 28 at 6.  She states that the chain attaching her ankle to the bed gave her "enough room to turn from

19   side to side a little bit, but not fully."  Dkt. 28, at 6.  She could not get up and stand or walk.  Dkt. 28, at 6.

20   She reports being unable to get in any other position that would help relieve the pain.  Dkt. 28, at 6.

21   Plaintiff reports feeling panicked when she was told that the hospital staff was thinking of sending her

22   back to WCCW because her labor was not progressing.  Dkt. 28, at 6.  Plaintiff asked them to please not

23   send her back.  Dkt. 28, at 6.  Officer Glasco states that she has had children herself and has been around

24   several other women who were having contractions.  Dkt. 30-3, at 20.  Officer Glasco states that she was

25   in the room with Plaintiff the whole four hours prior to her admission, and Plaintiff did not seem to be

26   having contractions.  Dkt. 30-3, at 20.

27        Around 11:00 p.m., Plaintiff was admitted to the hospital.  Dkt. 30-2, at 35.  Her admission form

28   indicates that she was having contractions and vaginal spotting.  Dkt. 30-2, at 35.  Her temperature was

"99+," and her son's heart rate was 170 beats per minute, leading to the impression that he had fetal tachycardia. Dkt. 30-2, at 35. Officer Glasco states that as soon as Plaintiff was admitted, Officer Joy left. Dkt. 30-3, at 21. Officer Glasco states that she doesn't think that she was told that Plaintiff was being admitted for delivery of the baby. Dkt. 30-3, at 21. She states that she recalls the hospital staff saying that she needed to be admitted because of the "fever and the condition of the child . . . something is going on . . . it could be an infection." Dkt. 30-3, at 21. Plaintiff states that once admitted, an IV was inserted and she was moved into a birthing room. Dkt. 28, at 7. She states that Officer Glasco chained her to a wheelchair to move her and then chained her to the bed in the birthing room. Dkt. 28, at 7. Plaintiff reports "intense, hard labor pains" at this point. Dkt. 28, at 7. Plaintiff states that the chain made it hard to move in bed, and she could not get up and move around. Dkt. 28, at 7. Sometime before 11:45 p.m., Plaintiff was given an epidural. Dkts. 28, at 7 and 30-2, at 37. She was unchained long enough for medical staff to insert the epidural, and then re-chained to the bed. Dkt. 28, at 7. Officer Glasco reports that she understood at that point the epidural was given for pain and so Plaintiff could attempt a vaginal delivery. Dkt. 30-3, at 22. Hospital treatment notes indicate that Plaintiff was comfortable on the epidural. Dkt. 30-2, at 37. She reports that within minutes of having the epidural, her temperature "suddenly went up and the baby's heartbeat was way too high." Dkt. 28, at 7. She reports that the nurses tried putting cold towels on her and giving her Tylenol, but it did not help. Dkt. 28, at 7. She states that they tried to break her membranes, and discovered that she had no amniotic fluid left. Dkt. 28, at 7. She was given oxygen. Dkts. 28, at 7 and 30-2, at 37.

At around 1:30 a.m. on April 16, 2007, Plaintiff consented to an emergency cesarean. Dkt. 30-2, at 37. Plaintiff's leg restraint was removed just prior to surgery. Dkts. 28, at 7, and 30-3, at 23. Around 2:30 a.m., Plaintiff's son was born. Dkt. 30-2, at 38. Carol Sarner, M.D. performed the surgery and her diagnosis was "term intrauterine pregnancy, chorioamnionitis, fetal tachycardia, failure to dilate, prolonged rupture of membranes." Dkt. 30-2, at 38. Plaintiff's son was immediately taken to the neonatal intensive care unit ("NICU") to receive antibiotics. Dkt. 28, at 8. Plaintiff reports that right after surgery, before she could even feel her legs, Officer Glasco chained her to the bed again. Dkt. 28, at 8. Officer Glasco states that she chained Plaintiff to the bed in the postrecovery room after the nurses "cleared her for restraining." Dkt. 30-3, at 23.

1    A few hours later, Plaintiff was brought in a wheelchair to the NICU to see her son.  Dkt. 28, at 8.

2  She reports being chained to the wheelchair.  Dkt. 28, at 8.  She states that she could walk only one or two

3  steps at this point.  Dkt. 28, at 8.

4    Plaintiff states that after 24 hours in the NICU, her son was allowed to move into her room.  Dkt.

5  28, at 8.  He was taken to the NICU every four hours for more medicine.  Dkt. 28, at 8.  Plaintiff was

6  chained to the bed.  Dkt. 28, at 8.  She states that once her son was returned from the NICU, after

7  receiving his medicine, out of her reach.  Dkt. 28, at 8.  Plaintiff states that the baby made a noise like he

8  was choking or was vomiting, so she called for help.  Dkts. 28, at 8 and 30-2, at 10.  Plaintiff states that

9  she pulled and pulled herself against the chains, but could not reach him.  Dkts. 28, at 8, and 30-2, at 10.

10  She reports being in pain and being "terrified."  Dkt. 28, at 9.  Plaintiff states that she had difficulty doing

11  the walking the nurses wanted her to do after her surgery because of the leg restraints Defendants forced

12  her to wear.  Dkt. 28, at 9.

13    Plaintiff was discharged from the hospital on April 19, 2007.  Dkt. 30-2, at 43.  Plaintiff was

14  released from WCCW on May 10, 2007.  Dkt. 30-2, at 10.

15    The Washington State Department of Corrections' policy in place at the time, Restricted Policy

16  420.250, provides:  "[a] female offender will not be restrained during labor and delivery of an infant."

17  Dkt. 39, at 10.

18    **B.    PROCEDURAL HISTORY**

19    On June 25, 2009, Plaintiff filed this case.  Dkt. 1.  She makes a claim for violation of her right to

20  be free from cruel and unusual punishment under both the Eighth Amendment to the United States

21  Constitution (via 42 U.S.C. § 1983) and Article 1, Section 14 of the Washington State Constitution.  *Id.*

22  She seeks declaratory relief that the Defendants violated her rights under both the federal and state

23  constitution.  *Id.*  She also seeks damages, attorneys' fees, and costs.  *Id.*

24    Parties have now filed cross motions for summary judgment.  Dkts. 34 and 27.  Defendants seek

25  summary dismissal of Plaintiff's claims.  Dkt. 34.  Plaintiff seeks partial summary judgment on her Eighth

26  Amendment claim against Officer Glasco.  Dkt. 27.  Some of the issues raised in these motions are now

27  resolved (see the discussion in the next section).  The outstanding issues are summarized in Section I. D.

28  below.

## C.    RESOLVED ISSUES

With the exception of Officers Glasco and Joy, all individually named Defendants have been dismissed by stipulation. Dkts. 16, 18, and 38. To the extent that Defendants' motion for summary judgment seeks dismissal of these dismissed parties, it should be denied as moot. Further, Plaintiff states in her response to Defendants' motion for summary judgment, that she will not pursue her claim for declaratory relief under either federal or Washington law. Dkt. 42, at 2. To the extent that Defendants seek dismissal of these claims in their motion for summary judgment, the motion should be granted and those claims dismissed. Plaintiff does not dispute that monetary damages are not available here against the Defendant State of Washington and its agency, the Department of Corrections, pursuant to the Eleventh Amendment to the United States Constitution. *Pittman v. Oregon Employment Dept.*, 509 F.3d 1065, 1071 (9th Cir. 2007) (*internal quotations omitted*)(as the Supreme Court has applied the Eleventh Amendment, an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State absent certain exceptions). Defendants' motion seeking dismissal of the damages claims against Washington and the Department of Corrections should be granted.

## D.    SUMMARY OF REMAINING ISSUES

Plaintiff states that her remaining claims are that Officers Glasco and Joy "violated her Eighth Amendment right to be free of cruel and unusual punishment when they shackled her during labor and immediately postpartum on April 15 and 16, 2007." Dkt. 42.

Defendants move for dismissal of Plaintiff's remaining claim, arguing that Plaintiff did not suffer any constitutional infringement, even if she did, her rights were not clearly established and so Officers Glasco and Joy are entitled to qualified immunity. Dkts. 34, and 44. Defendants also argue that her claims should be dismissed because Plaintiff failed to exhaust her remedies under the Prison Litigation Reform Act ("PLRA") and the doctrine of laches bars Plaintiff's claims. *Id.*

Plaintiff moves for summary judgment against Officer Glasco, arguing that shackling her during labor and immediately postpartum violated her Eighth Amendment rights, and those rights were clearly established at the time. Dkts. 27 and 42. Plaintiff argues that because she was out of prison when she filed her complaint, she did not need to exhaust under the PLRA. Dkt. 42, at 5 (*citing Talamantes v. Leyva*, 575 F.3d 1021, 1023 (9th Cir. 2009)). Plaintiff argues that Defendants failed to plead laches in

1   their answer, thereby waiving the defense. Dkt. 42, at 6. Plaintiff argues that even if Defendants did not

2   waive the defense, Plaintiff filed her case within the statute of limitations and there is no basis to shorten

3   the time allowed by law to file her claim. Dkt. 42, at 6.

4       Defendants move to strike Exhibits 3 and Exhibits 20-24 to the Declaration of Michael Wampold.

5   Dkt. 44. Defendants move to strike any evidence related to actions or activities after 6:00 a.m. on April

6   16, 2007. Dkt. 44. Defendants move to strike the unsupported "opinions" of Dr. Thomas Easterling.

7   Dkt. 44. Defendants also move to strike exhibits 2 and 3 of Plaintiff's Opposition to Defendants' motion

8   (Dkt. 43, at 7-36). Dkt. 46.

9       This opinion will first address the motion to strike, then the issues of PLRA exhaustion and laches.

10  This opinion will lastly address the core issue of qualified immunity.

11                          **II.   DISCUSSION**

12      A.    **MOTION TO STRIKE**

13      Defendants' motion to strike (Dkt. 44) should be denied, in part, and granted, in part.

14  Defendants move to strike Exhibit 3 to the Declaration of Michael Wampold. Dkt. 44. Exhibit 3 purports

15  to be a "custody review" sheets. Dkt. 30-2, at 20. These pleadings (Dkt. 30-2, at 20-22) should be

16  stricken as no foundation has been laid for the document's authenticity. Fed. R. Ev. 602.

17      Defendants' motion to strike Exhibit 20 to the Declaration of Michael Wampold should be

18  granted. Exhibit 20 is a June 2007 letter from the American College of Obstetricians and Gynecologist

19  stating it opposes shackling inmates in labor. Dkt. 30-4, at 16. Consideration of that document was not

20  necessary to decide these motions.

21      Defendants' motion to strike Exhibit 21-24 to the Declaration of Michael Wampold should be

22  granted. These pleadings are articles from various sources opposing shackling inmates in labor. They

23  also are unnecessary and are of limited relevance.

24      Defendants' motion to strike any evidence related to actions or activities after 6:00 a.m. on April

25  16, 2007, should be denied to the extent that this evidence provides background facts. Dkt. 44.

26      For the purposes of this motion alone, Defendants motion to strike the opinions of Dr. Thomas

27  Easterling should be denied. Dkt. 44. Some of Defendants' discussion of his opinion was well taken, but

28  that evidence was not necessary to decide this motion.

1    Defendants' motion to strike ( Dkt. 46) should be granted.  Exhibits 2 and 3 of Plaintiff's

2    Opposition to Defendants' motion, (Dkt. 43, at 7-36), complaints purportedly filed in U.S. District Court

3    for the Northern District of Illinois and  U.S. District Court for the Middle District of Tennessee.  These

4    pleadings are of limited relevance and were not considered.

5        **B.**    **PLRA EXHAUSTION and LACHES**

6           1.    <u>PLRA</u>

7    A person not incarcerated or detained at the time an action is filed is not a "prisoner" for purposes

8    of the PLRA, and therefore, not subject to the exhaustion requirement.  *Talamantes v. Leyva*, 575 F.3d

9    1021, 1023 (9th Cir. 2009).  It is undisputed that Plaintiff was not "incarcerated or detained" at the time

10    the Complaint was filed.  Defendants' motion to summarily dismiss Plaintiff's claims based on Plaintiff's

11    failure to exhaust her administrative remedies under the PLRA should be denied.

12           2.    <u>Laches</u>

13    "The doctrine of laches is a creature of equity and is grounded upon the principles of equitable

14    estoppel." *Rutter v. Rutter's Estate*, 59 Wash.2d 781, 784 (1962).  Laches does not bar an action short of

15    the applicable statute of limitations "unless it is made to appear that, by reason of the delay in asserting a

16    claim, the other party has altered his position or has been otherwise injured by the delay." *Id.*

17    To the extent Defendants move to dismiss Plaintiff's claims for declaratory relief through the

18    doctrine of laches, this opinion has already held that those claims should be dismissed and so the motion

19    is moot.  To the extent that Defendants use the doctrine to defend against her other claims, the motion

20    should be denied.  It is undisputed that Plaintiff filed this action within the applicable statute of

21    limitations.  Defendants make no showing that by reason of the delay Plaintiff has altered their position.

22    Defendants make no showing that they have been "otherwise injured by the delay."  Defendants motion to

23    summarily dismiss Plaintiff's claims on the doctrine of laches should be denied.

24           3.    <u>Conclusion</u>

25    Plaintiff was not required to exhaust her administrative remedies under the PLRA.  The doctrine

26    of laches does not bar Plaintiff's claim for damages, attorney's fees, and costs.  This opinion will now

27    turn to the core of the case, whether the officers here are entitled to summary judgment on their qualified

28    immunity defense.

1

C.      SUMMARY JUDGMENT - STANDARD

2      Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and

3   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

4   material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

5   moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a

6   sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

7   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for

8   trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving

9   party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party

10   must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also*

11   Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient

12   evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions

13   of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac.*

14   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15      The determination of the existence of a material fact is often a close question.  The court must

16   consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

17   preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809

18   F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party

19   only when the facts specifically attested by that party contradict facts specifically attested by the moving

20   party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at

21   trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809

22   F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not

23   sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89

24   (1990).

25

D.      QUALIFIED IMMUNITY

26      "[G]overnment officials performing discretionary functions generally are shielded from liability

27   for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

28   rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

1  (1982).  "Through application of the qualified immunity doctrine, public servants avoid the general costs

2  of subjecting officials to the costs of trial - distraction of officials from their governmental duties,

3  inhibition of discretionary action, and deterrence of able people from public service."  *V-1 Oil Co. v.*

4  *Smith*, 114 F.3d 854, 857 (9th Cir. 1997)(*internal citations omitted*).  The immunity is "immunity from

5  suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

6        The Supreme Court established a two-part analysis in *Saucier v. Katz*, 533 U.S. 194, 201 (2001),

7  for determining whether qualified immunity is appropriate in a suit against a public official for an alleged

8  violation of a constitutional right.  *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004), citing

9  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although no longer mandatory, the Supreme Court has

10  recently held that it may be "beneficial" for a court required to rule upon qualified immunity to examine

11  the *Saucier* factors:  (1) whether the official violated the plaintiff's constitutional rights on the facts

12  alleged and (2) if there was a violation, whether the constitutional rights were clearly established.

13  *Pearson v. Callahan*, 129 S.Ct. 808, (2009) (holding that the *Saucier* two-part analysis was no longer

14  mandatory).  Application of the factors is beneficial here, so this opinion will first turn to whether

15  Plaintiff's Eighth Amendment rights were violated, and then if they were violated, whether they were

16  clearly established in April of 2007.

17                    1.    Violation of Constitutional Rights?

18        The Eighth Amendment to the United States Constitution prohibits the use of "cruel and unusual

19  punishment."  The Eighth Amendment is applied to the states via the Fourteenth Amendment.  *Wilson v.*

20  *Seiter,* 501 U.S. 294, 296-97(1991).  The "unnecessary and wanton infliction of pain constitutes cruel and

21  unusual punishment forbidden by the Eighth Amendment."  *Hope v. Pelzer*, 536 U.S. 730, 737

22  (2002)(*some internal quotation marks omitted*).  "Among unnecessary and wanton inflictions of pain are

23  those that are totally without penological justification."  *Id.* (*internal citations omitted*).  In making this

24  determination in the context of prison conditions, the court must "ascertain whether the officials involved

25  acted with 'deliberate indifference' to the inmates' health or safety."  *Id.*, at 738 (*internal citations*

26  *omitted*).

27        The Eighth Amendment's prohibition of cruel and unusual punishment also imposes duties on

28  prison officials, "who must provide humane conditions of confinement; prison officials must ensure that

ORDER
Page - 11

1   inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to

2   guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)(*internal citations*

3   *omitted*).  "Deliberate indifference to serious medical needs of prisoners" constitutes a violation of the

4   Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

5        There is no Ninth Circuit case addressing whether the shackling of inmates during labor and

6   delivery of infants violates the Eighth Amendment.  Plaintiff here argues that she is making a essentially a

7   "hybrid" claim.  Dkt. 27, at 19.  She states:

8        One aspect of her serious medical need - to deliver her baby - was met by prison officials,
         who took her to the hospital (eventually) for assistance with childbirth.  Yet, in shackling
9        Ms. Brawley throughout labor, corrections officers interfered with her serious medical
         needs by putting her health and her pregnancy risk.  The presence of the shackles also
10       inflicted both physical and psychological pain.  While either serves as an independent
         basis for finding a sufficiently serious deprivation, their coexistence is significant because
11       that is precisely what renders the shackling of laboring women so obviously inhumane.

12  Dkt. 27, at 19.

13       There are two parts in the test that the Ninth Circuit uses to determine "deliberate indifference" in

14  the context of cases alleging a failure to treat a serous medical need.  *Jett v. Penner*, 439 F.3d 1091, 1096

15  (9th Cir. 2006). "First, the plaintiff must show a serious medical need," and "[s]econd, the plaintiff must

16  show the defendant's response to the need was deliberately indifferent."  *Id.* (*internal citations omitted*).

17            a.     *Substantial Risk to Health or Safety, or Serious Medical Need*

18       At the first step here then, the question under the Eighth Amendment is whether prison officials

19  exposed Plaintiff to a sufficiently substantial "risk of serious damage" to her future health, *Farmer v.*

20  *Brennan*, 511 U.S. 825, 842-843 (1994)(*internal citation omitted*), and/or whether she had a serious

21  medical need," *Jett,* 1096.  The first step is judged from an objective point of view.

22       There is sufficient evidence in the record to conclude that Plaintiff endured unnecessary pain, was

23  exposed to a sufficiently serious risk of harm, and had a serious medical need when she was shackled to

24  the hospital bed on April 15, 2010 and April 16, 2010.  Common sense, and the DOC's own policy, tells

25  us that it is not good practice to shackle women to a hospital bed while they are in labor.  Defendants

26  acknowledge that there are issues of fact as to whether Plaintiff was in labor.  Dkt. 44.  The record,

27  viewed in a light most favorable to Plaintiff, indicates that she was experiencing strong contractions,

28  some that she felt in her back, as early as when she presented to the WCCW clinic at 6:00 p.m. on April

15, 2007.  Dkts. 30-2, at 25, 30-3, at 6, and 28, at 5.  There is evidence in the record that she continued to have more and more painful contractions until she received her epidural in the hospital several hours later.  Dkts. 28-7, at 6; 30-2, at 35.

There is evidence in the record that Plaintiff endured unnecessary pain due to being chained to her bed.  Thomas R. Easterling, M.D. testified on behalf of Plaintiff.  Dkt. 30-3, at 25.  Dr. Easterling is a board certified obstetrician-gynecologist.  Dkt. 29, at 1. Dr. Easterling testified that "[t]he ability to move and change positions is integral to a woman trying to cope with pain, and so [Plaintiff's] ability to deal with pain by changing positions is severely impaired."  Dkt. 30-3, at 26.

Further, there is evidence that Plaintiff was exposed to a sufficiently serious risk of harm and had a serious medical need - being in labor - when she was shackled on April 15 and 16, 2007.  Dr. Easterling testified that it is important for women who are in labor to be able to move around to avoid venocaval occlusion, hypertension, and fetal compromise.  Dkt. 30-3, at 26.  Defendants offer no evidence to counter this opinion.

Moreover, there is no evidence in the record which indicated that shackling Plaintiff was justified by any legitimate penological concern.  There is no evidence that Plaintiff was dangerous to herself or others.  There is no evidence that she posed a flight risk.  The evidence shows that on April 15, 2007, when Officers Glasco and Joy took her to the hospital, at a minium, she was a pregnant woman at or near full term, was running a fever, was in pain, and was moving slowly.  Dkt. 23-3, at 43-45.

Plaintiff has shown that there is sufficient evidence in the record, from an objective standpoint, that she had a serious medical need and was exposed to an unnecessary risk of harm.  The inquiry does not end here, however.  To prevail on her motion, Plaintiff must show that Officer Glasco was deliberately indifferent to that need or risk of harm.  *Jett*, at 1096.

b.   *Deliberate Indifference*

The "second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."  *Jett*, at 1096. (*internal citations omitted*).  "Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference."  *Toguchi v. Chung*, 391 F.3d

1   1051, (9th Cir. 2004).  Existence of this subjective state of mind may be inferred from the fact that the

2   risk of harm is obvious.  *Hope,* at 738.

3          Although they testify that they know that it was against DOC policy to shackle a woman in labor,

4   there are issues of fact as to whether Officers Glasco and Joy were aware that Plaintiff was in labor when

5   they took her to the hospital on April 15, 2007, and when Officer Glasco remained with her there until the

6   birth of Plaintiff's son.  Officer Glasco denied that she was told that Plaintiff was having contractions.

7   Dkt. 30-3, at 16.  She testified that when she asked Plaintiff, Plaintiff denied having contractions on the

8   ride to the hospital.  Dkt. 30-3, at 16.  Officer Glasco testified that in the four hours prior to Plaintiff's

9   admission to the hospital, while in the examination room, Plaintiff did not seem to be having contractions.

10  Dkt. 30-3, at 20.  Although it strains the imagination, Officer Glasco maintains that she did not think

11  Plaintiff was in labor even after the hospital staff gave Plaintiff an epidural which Officer Glasco

12  acknowledges she knew was for pain and so Plaintiff could attempt a vaginal birth.  These are the kinds of

13  credibility decisions left to the fact finder.  There are issues of fact as to whether Officers Glasco and Joy

14  were deliberately indifferent to the risks of harm to Plaintiff and her serious medical needs when they

15  shackled her.  Plaintiff's motion for summary judgment on the liability of Officer Glasco, then must be

16  denied at this stage.  (Plaintiff's motion for summary judgment did not address the liability of Officer

17  Joy.)

18         The inquiry does not end here, however, regarding Defendants' motion for summary judgment.

19  The next question that must be determined is:  even if Plaintiff is able to show that her constitutional

20  rights were violated, in order to overcome Defendants' motion for summary judgment on qualified

21  immunity, Plaintiff must show that her rights were clearly established at the time.

22              2.    Constitutional Rights Clearly Established?

23         In analyzing the second part of the *Saucier* test, the issue is "whether the plaintiff's constitutional

24  right was clearly established at the time of the injury."  *Boyd* at 780.  "For a constitutional right to be

25  clearly established, its contours must be sufficiently clear that a reasonable official would understand that

26  what he is doing violates that right."  *Id.* at 780-781.  "In other words, an official who makes a reasonable

27  mistake as to what the law requires under a given set of circumstances is entitled to the immunity

28  defense."  *Id.*  The Constitution, decisions of the United States Supreme Court, and decisions of lower

1    federal courts may provide notice of established constitutional rights. *Hope* , at 741-42.

2          Plaintiff has made a sufficient showing that by April of 2007 shackling inmates while they are in

3    labor was clearly established as a violation of the Eighth Amendment's prohibition against cruel and

4    unusual punishment.  Defendants admit that Washington Department of Correction's own policy

5    prohibited it.  Although not binding authority, the Eight Circuit recently held that a female inmate's

6    "protections from being shackled during labor had . . . been clearly established by decisions of the

7    Supreme Court and the lower federal courts before September 2003." *Nelson v. Correctional Medical*

8    *Services,* 583 F.3d 522, 533 (8th Cir. 2009).  The *Nelson* court noted that as early as 1994, a federal

9    district court in the District of Columbia held that shackling an inmate in labor was a violation of female

10   prisoner's constitutional rights. *Women Prisoners of D.C. Dept. of Corrections v. District of Columbia,*

11   877 F.Supp. 634 (D.D.C. 1994), *modified in part on other grounds,* 899 F.Supp. 659 (D.D.C. 1995).  The

12   *Nelson* court also reviewed the U.S. Supreme Court holding in *Hope v. Pelzer*, 536 U.S. 730 (2002).  In

13   *Hope*, the Supreme Court held that under the circumstances presented in the case, handcuffing an inmate

14   to a hitching post was a violation of the Eighth Amendment.  The *Hope* court held that the prison officials

15   had acted with deliberate indifference to Hope's health and safety in "violation of the Eighth Amendment

16   by restraining him '[d]espite the clear lack of an emergency situation' in a manner 'that created a risk of

17   particular discomfort and humiliation.'" *Nelson,* at 532 (*quoting Hope,* at 737-38).  The *Nelson* court

18   concluded that the Supreme Court holding in *Hope* regarding shackling an inmate to a hitching post, and

19   the holdings from the D.C. district courts was sufficient to show that the right not to be shackled during

20   labor and delivery of an infant was clearly established.  The *Nelson* court also examined the Arkansas

21   Department of Corrections regulations and found that they, too, discouraged the shackling of the inmate

22   in that case.  *Id.,* at 533.  The *Nelson* court's reasoning is persuasive.

23         As in *Nelson,* a reasonable factfinder could determine from the record in this case that the

24   Defendants  were not facing an emergency situation but nevertheless "subjected [the Plaintiff] to a

25   substantial risk of physical harm, to the unnecessary pain caused by the [shackles] and the restricted

26   position of confinement ... [and] created a risk of particular discomfort and humiliation," such that

27   qualified immunity should be denied.  *Nelson,* at 532.

28                     3.    <u>Conclusion on Qualified Immunity</u>

There are issues of fact as to whether Officers Glasco and Joy violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's Motion for Partial Summary Judgment against Officer Glasco should be denied. Defendants' motion for summary dismissal of Plaintiff's Eighth Amendment claim on qualified immunity grounds should be denied. Plaintiff has shown evidence, if believed, that would demonstrate a violation of her clearly established rights, barring the qualified immunity defense.

### III.   ORDER

Therefore, it is hereby, **ORDERED** that:

• Defendants' motion to strike (Dkt. 44) is **GRANTED, IN PART**, and **DENIED, IN PART**, as stated above;

• Defendants' motion to strike (Dkt. 46) is **GRANTED**;

• Defendants' Amended Motion for Summary Judgment (Dkt. 22 refiled as Dkt. 34) is

  • **DENIED AS MOOT** to the extent Defendants seek dismissal of parties already dismissed by stipulation,

  • **DENIED** as to dismissal based on Plaintiff's failure to exhaust or laches,

  • **DENIED** as to qualified immunity on Plaintiff's Eighth Amendment Claim,

  • **GRANTED** as to Plaintiff's claims for declaratory relief, and

  • **GRANTED** as to Plaintiff's damages claims against the State of Washington and the Washington State Department of Corrections;

• Plaintiffs' Motion for Partial Summary Judgment (Dkt. 27) is **DENIED**,

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 3rd day of May, 2010.

Robert J. Bryan
United States District Judge